IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MATTHIAS J. KLEINZ and LAURA C.          )
WIEGAND, husband and wife,               )
                                         )   2:19-CV-01426-PLD
                                         )
              Plaintiffs,                )
                                         )
     vs.                                 )
                                         )
UNITRIN AUTO AND HOME                    )
INSURANCE COMPANY, KEMPER                )
CORPORATION and KEMPER SERVICES          )
GROUP,                                   )
                                         )
              Defendants.

<u>MEMORANDUM OPINION</u>

Plaintiffs Matthias J. Kleinz and Laura C. Wiegand originally brought a six-count Complaint against Defendants Unitrin Auto and Home Insurance Company, Kemper Corporation and Kemper Services Group (sometimes collectively referred to as "Unitrin") in the Court of Common Pleas of Allegheny County, in which they alleged claims for breach of contract and bad faith against each of the defendants. After Defendants removed the case to this Court on the basis of diversity jurisdiction and moved to dismiss Counts II, IV and VI of Plaintiffs' Complaint (ECF No. 2), Plaintiffs sought and were granted leave to amend the complaint. An Amended Complaint was filed on February 20, 2020 (ECF No. 18).

Presently pending is Defendants' Motion to Dismiss the Amended Complaint (ECF No. 20), which again seeks dismissal of the bad faith claims in Counts II, IV and VI. Defendants also move to dismiss any claims Plaintiffs may be asserting under the Unfair Insurance Practices Act (UIPA). The motion has been fully briefed (ECF Nos. 21, 24, 28) and during a telephone conference on April 20, 2020, oral argument was heard. For the reasons that follow, Defendants' motion will be granted in part and denied in part.

# I. Allegations of Amended Complaint

Plaintiffs' claims arise out of events that occurred after Plaintiff Kleinz was in a motor vehicle accident on October 10, 2017. On that date, a bicycle he was operating was involved in a collision with a vehicle that was being operated by Frank Marinello ("Marinello").[1] (Amended Complaint, ¶¶ 3-10). As a result, Plaintiff Kleinz sustained "severe and permanent injuries," including multiple fractures, permanent scarring, contusions and pain. (*Id.* ¶¶ 11, 13). Plaintiff Wiegand, his wife, also claims damages as a direct result of her husband's accident. (*Id.* ¶¶ 15-17).

At the time of the accident, Marinello was insured by USAA General Indemnity Company ("USAA") with a bodily injury liability limit of $50,000.00 per person. (Amended Complaint, ¶ 18). The $50,000.00 policy limit was tendered to and accepted by Plaintiffs, but according to the Complaint, was not adequate to compensate them for the injuries and damages sustained as a result of the motor vehicle accident. (*Id.* ¶¶ 19-20).

Plaintiffs owned two automobiles that were insured by Unitrin Auto and Home Insurance Company with liability limits of $250,000.00 each person and underinsured motorist coverage of $250,000.00 each person/$500,000.00 each accident, stacked. (Amended Complaint, ¶¶ 38-40).[2] Both Plaintiffs assert that they are insureds and are entitled to the benefits of the underinsured motorist coverage under the policy. (*Id.,* ¶ 44).

---

[1] In the Amended Complaint and in their brief, Plaintiffs refer to Marinello as "Defendant Marinello." Marinello is not a defendant in this action.

[2] The Amended Complaint alternatively argues that Defendants Kemper Corporation and Kemper Services Group jointly or severally issued an auto policy to Plaintiffs. *See* Counts III through VI. The facts pleaded in the Amended Complaint as to these defendants are identical to those alleged against Defendant Unitrin.

Plaintiffs allege that in December 2018, they made a demand to Unitrin for underinsured motorist ("UIM") policy benefits. (Amended Complaint, ¶¶ 21, 45). A demand package, including information as to liability and damages, was provided to Michael McLaughlin, a UIM adjuster and agent for "one and/or all" of the Defendants. (*Id.* ¶¶ 22, 46). It included the offer from Marinello's carrier to pay the available policy limits of $50,000.00. (*Id*). According to the Amended Complaint, McLaughlin made an "initial offer" of $10,000, even though he was aware that the UIM claim was worth "at least $10,000.00" and that Plaintiffs were unable to respond to this initial offer because Plaintiff Kleinz was still receiving medical treatment. (*Id.* ¶¶ 24-26).

Thereafter, Plaintiffs' counsel provided Defendants with medical records and lien information regarding Plaintiff Kleinz's injuries, condition, treatment and prognosis and submitted "different written and oral demands to tender its underinsured motorist benefits." (*Id.* ¶¶ 47,48). They continued to request a figure over $10,000.00 but also made a request for a partial payment in that amount. (*Id.* ¶¶ 27, 28). While Defendants initially refused to pay this amount, they later paid $10,000.00 to Plaintiffs but failed to make any additional offers or payments despite concluding that the value of the UIM claim exceeded this amount. (*Id.* ¶¶ 28-32).[3]

Plaintiff has asserted claims against each of the three defendants for breach of contract and bad faith in violation of 42 Pa. C.S.A. § 8371 and also reference the Unfair Insurance Practices Act, 40 P.S. § 1171.5. Defendants now move to dismiss all of the bad faith claims in the Amended Complaint as well any claim that is based upon unfair insurance practices.

---

[3] Defendants contend that the reason they made no further offers was because the parties had reached an "understanding" that there would be no further negotiations until Plaintiff Kleinz, who was still being treated, was in a position to make a demand. (ECF No. 21 at 5.) Plaintiffs dispute this statement, which relies on materials outside the pleadings. Therefore, the Court will not consider this argument as it would be inappropriate to do so for purposes of a motion to dismiss.

## II.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). While "accept[ing] all of the complaint's well-pleaded facts as true," the court "may disregard any legal conclusions." *Id.* at 210–11.

To survive the motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). In sum, the plaintiff "must plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014).

To assess the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must take three steps: (1) outline the elements the plaintiff must plead to state a claim for relief; (2) peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth; (3) look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

4

The court's plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In ruling on a Rule 12(b)(6) motion, courts generally consider only the complaint, exhibits attached thereto, and matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). In addition, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

In their briefs, Defendants reference a police report regarding the underlying accident, email communications between counsel during the relevant time periods and a portion of a letter from Plaintiffs' counsel in which he supplied information about the claim. (ECF No. 21 at 2, 5-6 & Exs. B, C.) They contend that the police report is referenced in Paragraph 21 of the Amended Complaint. Paragraph 21 alleges that in December 2018, Plaintiffs made a demand for UIM benefits and that this demand included an October 11, 2018 letter from Plaintiff's counsel to USAA to which the police report was allegedly attached. This chain of inferences is too attenuated to support the contention that the police report is "referenced" in the Amended Complaint. Moreover, contrary to Defendants' suggestion, the Amended Complaint is not "based on" the police report, but rather, on the insurance policy.[4]

Defendants do not explicitly argue that the police report represents a public record, but any such argument would be unavailing. The Court of Appeals has defined public records narrowly

---

[4] Defendants' reliance on *Myerski v. First Acceptance Insurance Co.*, 2016 WL 3227266 (M.D. Pa. June 13, 2016) is misplaced. In that case, the plaintiff did rely on a police report. The basis for the bad faith claim was that the insurer had improperly denied an uninsured motorists claim after being supplied with a statement in the police report that allegedly indicated that the tortfeasor was uninsured.

for the purpose of a motion to dismiss, including "criminal case dispositions such as convictions or mistrials, letter decisions of government agencies, and published reports of administrative bodies." *PBGC*, 998 F.2d at 1197. A police report does not meet this narrow definition. *See Toner v. GEICO Ins. Co.*, 262 F. Supp. 3d 200, 205 n.3 (E.D. Pa. 2017) (refusing to consider a police report in an insurance case).

For these reasons, the Court declines to consider the police report in resolving the motion to dismiss. Defendants have not explained why the Court should consider other information that is outside of the Amended Complaint, including the emails and correspondence which are attached to their briefs and therefore, they will not be considered. The Court similarly declines to consider the extraneous material that has been supplied by Plaintiffs. (ECF No. 25 at 6, 8, 10, 12, 13, 16-17 & Exs. 1-6.)

## III.   Discussion

In order to recover under a bad faith claim under Pennsylvania statutory law, a plaintiff must show (1) that the defendant did not have a reasonable basis for denying benefits under the policy; and (2) that the defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim. *Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 365 (Pa. 2017). It is well established that Pennsylvania's "bad faith statute extends to the handling of UIM claims." *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 500 (Pa. Super. 2004) (citing *Bonenberger v. Nationwide Mut. Ins. Co.*, 791 A.2d 378, 381 (Pa. Super. 2002)). As the Third Circuit has explained, the issue in statutory bad faith claims is the manner in which insurers discharge their duties. *Wolfe v. Allstate Prop. & Cas. Ins. Co.*, 790 F.3d 487, 499 (3d Cir. 2015)

In Counts II, IV and VI of the Amended Complaint, Plaintiffs allege in identical language that the Defendants engaged in bad faith claims handling. In Paragraph 58, for example, the

Amended Complaint includes a number of subparagraphs which are alleged to represent bad faith conduct on the part of Unitrin. This includes, among other things, failing to evaluate and re-evaluate Plaintiffs' claim on a timely basis, failing to offer a reasonable payment to Plaintiffs, failing to effectuate an equitable settlement of Plaintiffs' claim, failing to reasonably investigate Plaintiffs' claim and engaging in "dilatory and abusive" claims handling.

In seeking dismissal of the bad faith causes of action, Defendants argue that Plaintiffs' allegations of bad faith are nothing more than boilerplate and fail to meet the requisite pleading standards established by the Supreme Court in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). They assert that the only factual allegation in the Amended Complaint is that the $10,000.00 paid to Plaintiffs was insufficient to compensate them, but this merely represents a disagreement about value, not evidence of bad faith.

Plaintiffs counter that Defendants' bad faith stems from their untimely and unreasonable offer to Plaintiffs; their failure to properly investigate the claim; and initially refusing to make the partial payment Plaintiffs requested from the adjustor. They assert that upon receipt and review of the settlement package and documentation provided, Defendants recognized that Plaintiff Kleinz's injuries were far in excess of $60,000 (the $50,000 limits paid by Marinello's insurance carrier, plus the $10,000 offered by Defendants). Plaintiffs claim that Defendants acted in bad faith by initially refusing to pay the requested partial payment of $10,000, and, ultimately, in offering a minimal amount of underinsured motorist coverage in an untimely manner despite their knowledge that the claim had a value in excess of the amount offered.

The Court agrees that in order to survive a motion to dismiss with respect to their bad faith claims, Plaintiffs must allege more than mere recitals or legal conclusions. *Santiago v. Warminster Twp.,* 629 F.3d 121, 128 (3d Cir. 2010). Thus, in order to decide Defendants' motion, it is

necessary to review the factual underpinnings of the Amended Complaint regarding Defendants' alleged bad faith. Plaintiffs aver that after they supplied the adjustor with a demand package, he made an "initial offer" of $10,000.00, but "acknowledged and was aware" that Plaintiffs' claim had a value of "at least" $10,000.  Plaintiffs claim that they were initially unable to respond to this offer because Plaintiff Kleinz was still receiving medical treatment, but later requested that $10,000 be paid to them as a "partial payment."  While Defendants initially refused to do so, they later made the partial payment but failed to make any further payment despite the fact that they had concluded that Plaintiffs' claim had a value of over $10,000.[5]

Both parties cite the Third Circuit's decision in *Keefe v. Prudential Property and Cas. Ins. Co.*, 203 F.3d 218 (2000) in support of their positions. In *Keefe*, the Third Circuit Court of Appeals considered whether under Pennsylvania law, an insurance company's refusal to pay unconditionally the undisputed amount of an insured's UIM claim could represent bad faith.  In that case, it was the insurer's position that it never has an obligation to make a partial payment on a UIM claim. Noting the absence of Pennsylvania appellate decisions on this issue, the *Keefe* court held that based upon the definition of bad faith in *Terletsky v. Prudential Property and Casualty Insurance Co.,* 649 A.2d 680 (Pa. Super. 1997),

> We are convinced that, if Pennsylvania were to recognize a cause of action for bad faith for an insurance company's refusal to pay unconditionally the undisputed amount of a UIM claim, it would do so only where the evidence demonstrated that two conditions had been met. The first is that the insurance company conducted, or the insured requested but was denied, a separate assessment of some part of her claim (*i.e.,* that there was an undisputed amount). The second is, at least until such a duty is clearly established in law (so that the duty is a known duty), that the insured made a request for partial payment.

---

[5] In their Reply Brief, Defendants contend that based upon statements in Plaintiffs' Brief in Opposition, they have admitted that their bad faith claim is "supported entirely on the basis that Unitrin failed to make an advance payment on his UIM claim." Reply at 4-5. However, the Court's analysis must be based on the allegations of the Amended Complaint, not arguments of counsel in their respective briefs.

*Id.* at 226.

In *Williams v. Nationwide Mut. Ins. Co.,* 750 A.2d 881 (Pa. Super. 2000), the plaintiffs/insureds asserted a bad faith claim based upon the insurer's failure to promptly pay undisputed partial UIM benefits. The Pennsylvania Superior Court, citing *Keefe,* sustained the insurer's preliminary objections to the bad faith claim. The court noted that the insureds did not plead that they requested, or that the insurer conducted, a valuation of their claim in order to set a partial fixed amount of UIM benefits. Even if they had, however, they also would have been required to plead that both parties agreed that the partial valuation was an "undisputed amount" of benefits owed and without such agreement no undisputed amount was ever established. *See also Zappile v. Amex Assur. Co,* 928 A.2d 251, 257 (Pa. Super. 2007) ("The holding in *Williams* does not foreclose the possibility that such a claim may, in certain circumstances, be viable, but it also does not state that partial payments are required.").

The Amended Complaint does not allege that any of the Defendants conducted, or that Plaintiffs requested but were denied, a separate assessment of some part of their claim. Plaintiffs do not plead that the parties had undertaken a partial valuation and agreed that the amount of $10,000 was an undisputed amount of benefits owed. Rather, it was an "initial offer" that Plaintiffs initially declined and later requested. An "initial offer" indicates that an insurer is willing to negotiate, and does not in itself represent evidence of bad faith. *See, e.g., Katta v. Geico Ins. Co.,* 2013 WL 275529, at *9 (W.D. Pa. Jan. 24, 2013). Therefore, to the extent that Plaintiffs attempt to assert that the failure by Defendants to make a more timely partial payment represents bad faith, any such claim fails as a matter of law.

At the same time, however, viewing the allegations of the Amended Complaint in the light most favorable to Plaintiffs, they allege that Defendants acknowledged and were aware that

Plaintiffs' claims exceeded the $50,000 already paid to Plaintiffs by Marinello's carrier and exceeded the initial offer of $10,000. If, as Plaintiffs allege, Defendants later made a *partial* payment of their claim, it may be inferred that Defendants had concluded that the claim was worth more than $10,000 but refused to effectuate an equitable settlement. While this may or may not ultimately support a bad faith claim, it is sufficient for now to defeat Defendants' motion to dismiss.

In addition, Plaintiffs allege that, despite the fact that they sent Defendants more information to support their claim, Defendants refused to investigate further or re-evaluate it. Although Defendants argue that they were proceeding pursuant to an "understanding" they had with Plaintiffs to delay further negotiations until Plaintiff Kleinz had completed his medical treatment, this represents a defense to the claims asserted and relies upon materials outside the pleadings. At this stage of the proceedings, where the Court must draw all inferences in favor of the Plaintiffs as the non-moving parties, Plaintiffs have alleged that Defendants did not investigate or re-evaluate their claim even after having received additional supporting evidence. These allegations are sufficient to state a claim for bad faith. *See Rancosky*, 130 A.3d at 94 ("bad faith conduct includes a lack of good faith investigation into the facts."); *Hollock v. Erie Ins. Exchange*, 842 A.2d 409, 413 (Pa. Super. 2004) (insurer acted in bad faith based on, inter alia, its failure to re-evaluate the value of the insured's claim, despite having received several pieces of information which should have caused it to re-evaluate the claim value).

Finally, Defendants seek dismissal of any claim that has been asserted by Plaintiffs under the UIPA. In their Brief in Opposition, Plaintiffs confirm that they are not asserting any claims under the UIPA and agree that references to the UIPA should be stricken from Paragraphs 62, 92 and 122 of the Amended Complaint. (ECF No. 24 at 18.)

Therefore, Defendants' motion to dismiss will be denied except as it relates to the UIPA.

An order will follow.


Dated May 4, 2020                              BY THE COURT:

                                              PATRICIA L. DODGE
                                              United States Magistrate Judge

11