IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MATTHIAS J. KLEINZ and LAURA C.           )
WIEGAND, husband and wife,                )
                                          )    2:19-cv-01426
                                          )
            Plaintiffs,                    )
                                          )
     vs.                                  )
                                          )
UNITRIN AUTO AND HOME                     )
INSURANCE COMPANY,                        )
                                          )
            Defendant.                    )

**MEMORANDUM OPINION**

Plaintiffs, Matthias J. Kleinz ("Kleinz") and his wife, Laura C. Wiegand, bring this action

in which they assert claims for breach of contract and bad faith against Defendant Unitrin Auto

and Home Insurance Company ("Unitrin"). Their claims arise out of their request for underinsured

motorists benefits ("UIM") after Kleinz was injured in a motor vehicle accident while riding his

bicycle.

Presently pending before the Court is Unitrin's motion for partial summary judgment (ECF

No. 34) in which it seeks dismissal of the bad faith claim asserted against it in Count II of the

Amended Complaint. For the reasons that follow, Unitrin's motion will be granted.[1]

I.   **Procedural History**

Plaintiffs brought a six-count Complaint against Unitrin, Kemper Corporation and Kemper

Services Group in the Court of Common Pleas of Allegheny County in October 2019. The

Complaint asserted identical claims of breach of contract and bad faith against each of the three

defendants. After Defendants removed the case to this Court on the basis of diversity jurisdiction

---

[1] The parties have consented to full jurisdiction by a magistrate judge (ECF No. 8).

and moved to dismiss Counts II, IV and VI of Plaintiffs' Complaint (ECF No. 2), Plaintiffs sought and were granted leave to amend the complaint, and an Amended Complaint was filed on February 20, 2020 (ECF No. 17). Defendants again filed a Motion to Dismiss the Amended Complaint (ECF No. 20), again seeking dismissal of the bad faith claims alleged in Counts II, IV and VI, as well as any claims Plaintiffs might be asserting under the Unfair Insurance Practices Act, 40 P.S. §§ 1171.1 to 1171.15 (UIPA). In a Memorandum Opinion and Order dated May 4, 2020, Defendants' motion was denied except insofar as the Amended Complaint made any claim under the UIPA (ECF Nos. 31, 32.)[2]

Shortly thereafter, the parties entered into a Stipulation (ECF No. 33) in which they agreed to the dismissal without prejudice of the two Kemper entities. Unitrin then moved for partial summary judgment with respect to Plaintiffs' bad faith claim against it (ECF No. 34).[3] Because Plaintiffs indicated that they could not appropriately respond to the motion until the completion of discovery on the bad faith claim, Unitrin's motion was stayed until discovery could be completed. Thereafter, the parties submitted supplemental briefs and materials regarding Unitrin's motion for partial summary judgment (ECF Nos. 78-79, 86-88, 90-91, 99-100, 103-07).[4]

---

[2] In its initial brief, Unitrin inaccurately took the position that the Court "limited" Plaintiffs' bad faith claim to two issues. In its reply brief, however, Unitrin responded to all of the issues raised by Plaintiffs. The Court will address all of the issues presented.

[3] Although the Stipulation dismissed the Kemper entities, Unitrin continued to name them in its filings and moved for summary judgment with respect to Counts II, IV and VI even though only Counts I and II remain in this case. During a telephone conference on November 10, 2020 and in a brief in opposition to Plaintiffs' motion for leave to file a Second Amended Complaint, counsel for Unitrin clarified that the references to the Kemper entities were inadvertently made.

[4] On November 2, 2020, Plaintiffs filed a motion for leave to file a Second Amended Complaint. On November 30, 2020, the Court denied this motion in a Memorandum Order (ECF No. 109).

II.    **Factual Background**[5]

A.    The UIM Claim and Subsequent Activities

On October 10, 2017, Kleinz, who was riding a bicycle, was involved in an accident with a vehicle driven by Frank Marinello ("Marinello") in an intersection on State Highway 51/Saw Mill Run Boulevard in Pittsburgh, Pennsylvania. Plaintiffs allege that after Marinello's vehicle stopped at the intersection, he suddenly began making a turn into the intersection and into the path of Kleinz. There was an impact between Kleinz's bicycle and Marinello's vehicle, and according to Plaintiffs, Kleinz suffered severe and permanent personal injuries as a result. Additionally, Kleinz's wife, Laura Wiegand, claims damages related to loss of consortium. (Defendant's Concise Statement of Undisputed Material Facts ("DCSMF") ¶¶ 2-5.)[6]

At the time of the accident, Plaintiffs were insured under an automobile policy issued by Unitrin (the "Policy"),[7] and Marinello was insured by USAA General Indemnity Company ("USAA"). Marinello's USAA policy provided $50,000 in liability limits, while the Unitrin Policy provided UIM benefits in the amount of $250,000 for each person and $500,000 for each accident.

---

[5] Plaintiffs have asserted some additional facts not cited herein. Unitrin has responded to certain paragraphs of Plaintiffs' Counter-Statement with the objections that they are "worded in such a manner as to not permit a reasonable response," or that they are so "grammatically flawed" or "confusing and imprecise" that they do not permit a reasonable response. (Defendant's Reply to Plaintiffs' Counter-Statement of Facts ("DRPCSF") (ECF No. 100) ¶¶ 59, 67-69, 71-73, 77-81, 89-90.) With respect to many of these objections, this Court is constrained to agree. Although the Court has tried to interpret these statements, some of them are essentially unintelligible. In addition, paragraphs 67, 68, 79, 80, 81 and 88 fail to cite to the record for support.

[6] ECF No. 36. The Amended Complaint, like the original Complaint, does not contain a separate claim for loss of consortium by Laura Wiegand, but her injuries are listed in the factual section (Am. Compl. ¶ 17) and incorporated into the legal claims asserted.

[7] Plaintiffs "deny" that the Policy was issued by Unitrin (Plaintiffs' Response to Defendants [sic] Concise Statement of Undisputed Material Facts ("PRCSMF") (ECF No. 86) ¶ 6), citing a Stipulation in which Unitrin was mistakenly identified as "Unitrin Direct Property & Casualty Co." (ECF No. 33.) Attached to the original Complaint is the Policy, the declarations page of which states "Insurance Provided By Unitrin Auto and Home Insurance Company." (ECF No. 1-2 at 30.) It cannot be reasonably disputed that Unitrin issued the policy at issue.

In correspondence dated December 10, 2018, Michael McLaughlin, a Unitrin claims adjuster ("McLaughlin"), provided consent for Kleinz to settle with Marinello and confirmed that Unitrin was waiving its subrogation rights against Marinello. His letter also stated, "This letter does not serve as an admission that Kleinz's injuries are worth more than the tortfeasor limit of $50,000 but simply is a consent to settle the underlying [bodily injury] claim."

USAA tendered its $50,000 policy limits to Plaintiffs. Because Plaintiffs contend this was insufficient to compensate them for their injuries and damages, they asserted a UIM claim under the Policy. (*Id.* ¶¶ 6-9.)

Michael McLaughlin of Unitrin evaluated the UIM claim on three occasions prior to receiving the package from Plaintiffs' counsel on December 26, 2018, namely on November 3, 2017, January 9, 2018 and July 20, 2018. (Plaintiffs' Concise Statement of Undisputed Facts ("PCSUF") ¶¶ 54-55;[8] ECF No. 91 Exs. 10, 11, 12.)

On November 3, 2017, McLaughlin evaluated the UIM claim based upon information with which he had been provided, including the police report, medical information and a conversation with Kleinz. (ECF No. 91 Ex. 15 at 1.) He then set Unitrin's reserves at $25,000. In performing his initial evaluation, McLaughlin assigned values as follows:

- Left hand fracture (no surgery) -- $25,000

- Left ankle fracture (no surgery) -- $25,000

- Left index finger laceration -- $5,000

- Forehead abrasion -- $5,000

- Left thigh abrasion -- $5,000

---

[8] ECF No. 87. After responding to Defendant's Concise Supplemental Statement of Material Facts (ECF No. 78), Plaintiffs provide additional facts, beginning with paragraph 54.

- Any complications -- $10,000

(ECF No. 91 Ex. 12.) While Plaintiffs contend that the claims note set the value of the claim at $75,000 (PCSUF ¶ 95), Unitrin set the reserves at $25,000 because Marinello's policy limits covered the first $50,000. (ECF No. 91 Ex. 12.)

McLaughlin re-evaluated the claim on January 9, 2018 and again on July 20, 2018, and each time he concluded that setting the reserves at $25,000 was appropriate. (ECF No. 91 Exs. 10, 11.) Plaintiffs contend that the claims notes show that Unitrin valued the case in the range of $97,550 to $102,500 before they provided additional information to McLaughlin in December 2018. (PCSUF ¶ 88.) However, they fail to cite to anything in the record that supports this statement.

In their brief, Plaintiffs quote at length from the claims notes in an attempt to demonstrate that the evaluations do not "line up" with each other and that McLaughlin omitted from both the January and July 2018 notes $45,000 worth of injuries that had been included in his original November 3, 2017 evaluation. (ECF No. 88 at 17-18.) When asked about this at his deposition, McLaughlin testified that this was simply a mistake "because if you look at the doctor's notes there's no difference in what I already knew." (McLaughlin Dep. 196:10-12.)[9] As noted, it is undisputed that McLaughlin concluded in each evaluation that a reserve setting of $25,000 was appropriate.

According to Plaintiffs, in December of 2018, their counsel sent a "demand package" to Unitrin and "made a demand" to Unitrin for "UIM policy benefits." On December 26, 2018, Plaintiffs' counsel sent an email to McLaughlin in which he stated that he was waiting for a response to the demand he had forwarded to McLaughlin on December 7, 2018. The next day,

---

[9] ECF No. 91 Ex. 1.

McLaughlin responded that he had received counsel's earlier email that included Kleinz's medicals but had not received a demand from Plaintiffs' counsel. Later that day, counsel sent an email to McLaughlin in which he made a demand for the UIM Policy limits of $500,000. McLaughlin responded on January 7, 2019 to Plaintiffs' demand by making an initial offer of $10,000. The same day, Plaintiffs' counsel told McLaughlin that Plaintiffs rejected Unitrin's initial $10,000 offer, adding that he was "not prepared to make a counter at this time" because Kleinz's treatment was ongoing. (DCSMF ¶¶ 9-15.)

Plaintiffs assert that the demand package sent to McLaughlin on December 26, 2018 was the first information that was provided to him about their claim and that McLaughlin testified that if he had received any information he would have put it in a claims note. (PCSUF ¶¶ 60-65.) Unitrin disputes this, contending that it had received certain information prior to that date, albeit from other sources. (DRPCSF ¶¶ 60-65.) Specifically, McLaughlin testified that what he received was "information on the injuries that I already knew about. There was no change in the injuries." (McLaughlin Dep. 209:15-17.) As noted above, the claims notes reflect that as early as November 1, 2017, McLaughlin received the police report and spoke to Kleinz, who described his injuries. (ECF No. 91 Ex. 15 at 1.)

According to Plaintiffs, McLaughlin did not re-evaluate the reserves upon receiving the December 26, 2018 package. (PCSUF ¶¶ 57, 74.) Unitrin disputes this assertion (DRPCSF ¶¶ 57, 74), noting that McLaughlin testified that he did not feel that there was a need to increase the reserves because "the only difference was the two small fractures rather than the hand fracture that I had no idea as to how serious it was… So by the time you get done with what I just explained to you, we're at the same figure." (McLaughlin Dep. 248.) He further testified that "the reserve analysis from 2017 would have been the same as after reviewing the December 26, 2018

medicals." (*Id.* at 249.)

Plaintiffs' counsel again wrote to McLaughlin on April 15, 2019, stating that he had "still not received a response from [Unitrin] to our UIM demand." It is undisputed, however, that between January 7, 2019 and April 15, 2019, Unitrin did not receive a response or counter-demand from Plaintiffs' counsel after McLaughlin made the initial offer of $10,000 on January 7, 2019. Consequently, on April 16, 2019, McLaughlin replied to Plaintiffs' counsel, confirming that Plaintiffs had not made a counteroffer after rejecting the initial $10,000 offer made on January 7th, and that he was still waiting for a counter-demand from counsel.

On June 3, 2019, more than a month later, Plaintiffs' counsel sent an email to McLaughlin in which he advised that Kleinz continued to treat for his injuries and Plaintiffs were "not prepared to make a final demand." At the same time, however, counsel asked McLaughlin to issue a check for the $10,000 that he had previously offered to Plaintiffs with the understanding that the $10,000 payment would be a partial payment toward a future settlement. As Plaintiffs' counsel stated in his email:

> … I would ask that a draft is issued to this firm and our clients for the currently offered $10,000 without prejudice for my clients to pursue the additional UIM benefits. Clearly, there is a believe [sic] by [Unitrin] that at least that is owed on the UIM claim. Thus, I would ask that same is issued without prejudice for my clients to pursue the additional funds.

(DCSMF ¶¶ 16-19.)

The next day, on June 4, 2019, McLaughlin responded by email to Plaintiffs' counsel in which he stated that any payment made by Unitrin would need to fully settle the matter in exchange for a release and, therefore, Unitrin was unable to make the advance payment of $10,000 that counsel had requested.  McLaughlin also noted that Unitrin was still waiting for a counter-demand from Plaintiffs' counsel. (*Id.* ¶ 20.) Plaintiffs deny that the June 4 email indicated that Unitrin was

still waiting for a demand. (PRCSMF ¶ 20.) The email stated as follows:

> You have indicated on a few occasions that Mr. Kleinz is having continued physical issues and is following up with his surgeon this summer. You have also indicated that you are not prepared to make a final demand and I assume that is because Mr. Kleinz wants to see what his surgeon indicates at his next visit.
>
> Any payment made for a UIM claim would have to be confirmed via a settlement release. There will be no advanced payments. If Mr. [Kleinz] does wish to now consider the $10,000 offer that was previously refused, we would make the $10,000 available in exchange for a full release of claims.

(ECF No. 91 Ex. 24.)

Plaintiffs' counsel responded to McLaughlin's June 4th email on June 11, 2019. He stated that "I agree that my client did not accept the offer of $10,000," but also indicated that "I don't believe I rejected the $10,000." He again asked Unitrin to "issue a draft in the amount of the $10,000 as a partial payment of the UIM benefits until a counter can be made and the matter can be resolved in full." After an exchange of emails on June 11, McLaughlin agreed to forward the $10,000 payment to counsel, which Plaintiffs' counsel characterized as a "partial payment" of Plaintiffs' UIM claim. In a June 12, 2019 email to McLaughlin, Plaintiffs' counsel stated that "I will be in touch once we can make a counter/final demand." (DCSMF ¶¶ 22-25.) On June 14, 2019, Unitrin mailed a check for $10,000 to Plaintiffs' counsel. The letter accompanying the check stated that:

> We appreciate your clarification that you did not intend to imply a rejection of our previously forwarded UIM offer of $10,000. As we do not dispute that $10,000 is owed, we are attaching our check for $10,000 and we restate that this is our offer to settle Mr. Kleinz's UIM claim.
>
> It is our understanding that you have not decided if this amount will constitute settlement of the claim or not and we await your advises in regards to [sic] your decision.

(ECF No. 91 Ex. 22.)

Thereafter, no meaningful communications took place between Plaintiffs and McLaughlin regarding a potential settlement of the UIM claim. McLaughlin's claims note of September 25, 2019 notes that if he did not hear anything further within ninety days, he would consider "closing the UIM exposure." (ECF No. 91 Ex. 7.)

Plaintiffs' lawsuit was commenced in state court on October 9, 2019. (Notice of Removal (ECF No. 1) Ex. 2.) Unitrin contends that Plaintiffs' counsel did not honor his promise to "be in touch once we can make a counter/final demand" before the lawsuit was commenced. (DCSMF ¶¶ 26-27.) Plaintiffs deny that they "promised" to contact Unitrin before filing suit but note that they did contact Unitrin in January 2020 after they initiated their lawsuit. (PRCSMF ¶¶ 26-27, 96; ECF No. 91 Ex. 4.) Plaintiffs' counter demand at that time was $490,000 (that is, the policy limits less the $10,000 that Unitrin had already paid).

B. Evidence Related to Bad Faith

During discovery, Unitrin directed interrogatories to Plaintiffs in which it asked them to "[s]tate all facts and identify all evidence" relating to Plaintiffs' contentions that Unitrin "had refused to negotiate a reasonable settlement" and "acted in bad faith" as alleged in the Amended Complaint. Plaintiffs' response directed Unitrin to the "correspondence between the parties," "the October 2018 demand to USAA and supporting information," and Plaintiffs' Memorandum in Support of its Motion to File an Amended Complaint and its Brief in Opposition to Defendant's Motion to Dismiss. (DCSMF ¶¶ 31-32.)

Kleinz was questioned at his deposition regarding the factual basis for his bad faith claim. He testified to his belief that there were some areas in which Unitrin acted in bad faith, including the extent to which Unitrin investigated the UIM claim and the "order of magnitude" of Unitrin's $10,000 settlement offer. According to Unitrin, Kleinz pointed to two areas that he felt

demonstrated that Unitrin's investigation was conducted in bad faith. First, he asserted that Unitrin's reliance on the police report, which blamed him for the accident, was faulty because he did not have an opportunity to "weigh in on the accounts or on the sequence of events on the day" and provide input into the police officer's report and the conclusions made in that report. McLaughlin noted in the claims file that the police officer had not talked to Kleinz as part of the investigation and that the other driver should not have made a left hand turn just prior to the accident. Further, McLaughlin failed to note in the claims file that he had concluded that Kleinz was comparatively negligent or inform Plaintiffs of this belief. (Plaintiffs' Response to Defendant's Concise Supplemental Statement of Undisputed Material Facts ("PRCSSMF") ¶¶ 26-27.)[10]

According to Unitrin, Kleinz suggested during his deposition that the other flaw in Unitrin's investigation is that it waited until three months before his deposition to contact Marinello directly to get a more accurate picture of what happened at the time of the accident.[11] (Defendant's Concise Supplemental Statement of Undisputed Material Facts ("DCSSMF") ¶¶ 22-28.)[12]

With regard to Unitrin's allegedly improper valuation of the UIM claim and what Plaintiffs characterize as a "lowball" offer, Kleinz testified that Unitrin's $10,000 offer was "insufficient," "not commiserate [sic] with the pain, injury and suffering" that he experienced after the crash, and

---

[10] ECF No. 87.

[11] Plaintiffs note that Kleinz only stated during his deposition that, based upon what Marinello said at his deposition earlier that day, it "seems like Unitrin contacted him three months ago about all of this…" (Kleinz Dep. (ECF No. 78 Ex. B) 116:22-23.) Unitrin asserts that because Marinello was represented by counsel, it was unable to directly contact him.

[12] ECF No. 78. Both Unitrin's original Concise Statement and its Concise Supplemental Statement begin with "paragraph 1." Paragraphs 1-21 of the Supplemental Statement consist of procedural history and the parties' interpretations of various elements of the procedural history, neither of which are relevant to the issues in the pending motion.

was "insulting" to him. He further testified that "this is a case that basically created significant pain, suffering, inconvenience to myself and significant burden to my family, including … the emotional impact this crash has had on me because I was lucky to basically stand up on that day…." and Unitrin's $10,000 offer did not adequately take that into account. (*Id.* ¶¶ 29-30.)

It is uncontroverted that when Unitrin made an offer, Plaintiffs represented that they were unable to respond.  When Unitrin made its offer of $10,000 on January 7, 2019, Plaintiffs asserted that they did not have a "clear picture" of the extent of Kleinz's injuries and there was "uncertainty about the ultimate resolution of symptoms." Therefore, as of January 2019, he was unable to accurately value his claim. (*Id.* ¶¶ 31-32.) Even though Kleinz did not have a clear enough understanding of his injuries to make a "final demand" at this time, Plaintiffs claim that Unitrin's offer was still unreasonably low based on the information it had at the time. (PRCSSMF ¶¶ 31-32.)

It is also undisputed that Unitrin solicited a settlement demand from Plaintiffs on April 16, 2019, and again on June 3, 2019. On both occasions, Kleinz was not in a position to counter the $10,000 offered in January. On June 12, 2019, his counsel told Unitrin that "I will be in touch once we can make a counter/final demand." He advised McLaughlin that he remained unable to do so because the prognosis for Kleinz's injuries was uncertain and thus, he could not "put a value on the case." In the following months, as Kleinz stated, "we hadn't quite reached the point of being able to assess the impact, the injury and the prognosis, and I think that stood in the way of us making a simple demand." (DCSSMF ¶¶ 34-36.)

Unitrin asserts that it was unable to formulate any alternative or updated valuation of the claim due to the uncertainty surrounding Kleinz's ongoing treatment and prognosis. Its earlier offer was rejected and then accepted as a partial payment. It then waited to hear from Kleinz's counsel

with a further demand, but never received one. Indeed, the next communication Unitrin received

from Plaintiffs was their Complaint and even then, Plaintiffs still did not know the value of their

UIM claim. (*Id.* ¶¶ 37-39.)

Plaintiffs admit that they did not contact Unitrin to discuss settlement or supply any

additional information between June 12, 2019 and the time they commenced their lawsuit in

October 2019. They did "get in touch" with Unitrin once they could make a counter/final demand

in January of 2020, but this was after the lawsuit had been filed. (DCSSMF ¶¶ 51-53.) Nonetheless,

Plaintiffs state that they made a policy limits demand in December 2018 and contend that Unitrin

had enough information regarding Kleinz's partial injuries to make a reasonable offer at that time.

(PRCSSMF ¶¶ 34-39.)[13]

### C.   Violations of the UIPA/Unitrin Policies

McLaughlin admitted during his deposition to committing two violations of the UIPA.[14]

First, although he believed that Kleinz was contributorily negligent and took this into account

when extending an initial offer of $10,000, he did not reveal this when the offer was made. Further,

McLaughlin did not indicate in the claims notes that he was taking Kleinz's contributory

negligence into account (McLaughlin Dep. 138-43).[15] This is a violation of Section 146.9 of the

UIPA, which requires an insurer to notify an insured if a settlement offer is premised upon, or

---

[13] Unitrin contends that Plaintiffs have admitted that, as of April 16, 2019, they "ha[d] not made a
UIM demand" and that, as of June 3, 2019, Plaintiffs were not prepared to make a settlement
demand. On June 12, 2019, counsel for Plaintiffs promised Unitrin that Plaintiffs would "be in
touch once [plaintiffs] can make a counter/final demand." (DCSSMF ¶¶ 46-50.) Plaintiffs assert
in turn that they "admitted" only that the requests for admission on these issues were sent to them,
not even that they received them. They state somewhat enigmatically that "It is denied the Plaintiffs
were not prepared to make a final **settlement** demand. Rather, Plaintiffs were not prepared to make
a final demand and were not prepared to further negotiate in June of 2019." (PRCSSMF ¶¶ 46-50.)
[14] They are actually violations of regulations issued under the Unfair Claims Settlement Practices
subchapter in the Pennsylvania Code, 31 Pa. Code §§ 146.1 to 146.10.
[15] ECF No. 107. These deposition pages were filed under seal.

reduced by, the insured's comparative negligence. 31 Pa. Code §146.9. Second, he did not respond to the December 7, 2018 email from Plaintiffs' counsel that requested that McLaughlin contact him to discuss potential settlement until January 7, 2019 when he made the initial offer of $10,000. This violates Section 146.5 of the UIPA, which requires a response within ten days. 31 Pa. Code §146.5(c). (DCSSMF ¶¶ 42-43; PCSUF ¶¶ 80-82.)[16]

Plaintiffs assert that in addition to violating the UIPA, McLaughlin's failure to inform Kleinz of his position also represented a violation of Unitrin's claims handling policies and procedures. (PRCSSMF ¶¶ 42-43; PCSUF ¶¶ 75-79.) They further indicate that the delay in responding to Plaintiffs' offer also violated Unitrin's policies on the proper claims handling. (*Id.* ¶¶ 83-86.) According to Unitrin, in his December 7, 2018 communication, Plaintiffs' counsel acknowledged that the volume of documents was too large to be sent over email and asked McLaughlin to review the documents once he received them through the regular mail. McLaughlin did not receive all of the documents from Plaintiffs' counsel until December 26, 2018 and made an offer on January 7, 2019. (ECF No. 106 ¶ 82; *id.* at 10.)[17]

## III.   Standard of Review

The Federal Rules of Civil Procedure provide that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the

---

[16] Plaintiffs object to Unitrin's characterization of these infractions as "technical" violations of the UIPA. (PRCSSMF ¶ 43.)

[17] Unitrin appears to be suggesting that, because it responded on January 7, 2019 to a claim that was not fully "received" with all supporting documentation until December 26, 2018, it acted within "10 working days" as prescribed in 31 Pa. Code § 146.5(c) (excluding weekends and New Year's Day, only 7 working days elapsed between those two dates). The Court need not resolve this issue, however, because as explained in this opinion, a violation of this UIPA regulation—and Unitrin's manual indicating it would comply with it—does not establish bad faith.

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[18] Summary judgment

may be granted against a party who fails to adduce facts sufficient to establish the existence of any

element essential to that party's case, and for which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of

identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that

burden has been met, the non-moving party must set forth "specific facts showing that there is a

genuine issue for trial" or the factual record will be taken as presented by the moving party and

judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). The Court of Appeals has held that "where the movant bears the burden of proof at trial

and the motion does not establish the absence of a genuine factual issue, the district court should

deny summary judgment even if no opposing evidentiary matter is presented." *National State Bank*

*v. Federal Reserve Bank*, 979 F.2d 1579, 1582 (3d Cir. 1992).

In following this directive, a court must take the facts in the light most favorable to the

non-moving party, and must draw all reasonable inferences and resolve all doubts in that party's

favor. *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 266 (3d Cir. 2005); *Doe v. County of*

*Centre, Pa.*, 242 F.3d 437, 446 (3d Cir. 2001).

## IV.   Discussion

In order to recover under a bad faith claim under Pennsylvania statutory law, a plaintiff

must show (1) that the defendant did not have a reasonable basis for denying benefits under the

---

[18] While Unitrin mistakenly cites to Rule 12(b)(6) in several places (ECF Nos. 34 and 99 at 7), it is clear that it is moving for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

policy; and (2) that the defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim. *Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 365 (Pa. 2017). As the Court of Appeals for the Third Circuit has summarized:

> Bad faith "must be proven by clear and convincing evidence and not merely insinuated." *Terletsky [v. Prudential Property & Casualty Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. 1997)] (collecting cases). As the District Court noted, this heightened standard requires the insured to provide evidence "so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." *Bostick v. ITT Hartford Grp.*, 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999) (citations omitted). In deciding a motion for summary judgment, a court "must view the evidence presented in light of the [insured's] substantive burden at trial." *Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005) (citations omitted).

*Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 179 (3d Cir. 2011). It is well established that Pennsylvania's "bad faith statute extends to the handling of UIM claims." *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 500 (Pa. Super. 2004) (citing *Bonenberger v. Nationwide Mut. Ins. Co.*, 791 A.2d 378, 381 (Pa. Super. 2002)).

However, neither an insured's disagreement with the amount offered on a UIM claim nor a citation to negligent mistakes made by the insurer in handling the claim is sufficient to demonstrate bad faith. *See Stewart v. Geico Ins.*, 2020 WL 822053 (W.D. Pa. Feb. 19, 2020) (summary judgment granted for insurer on bad faith claim where plaintiff pedestrian suffered injuries that he valued at $2 million but the insurer investigated, set the value of the claim at $125,000, set reserves at $55,000 and offered $25,000); *Schifino v. Geico Gen. Ins. Co.*, 2013 WL 6533180, at *21 (W.D. Pa. Dec. 13, 2013) ($10,000 initial offer on UIM claim valued at $60,000 did not constitute bad faith and although GEICO's conduct was "not free from criticism in its initial handling of the claim … this conduct is more indicative of poor judgment than bad faith.")

Plaintiffs contend that Unitrin engaged in bad faith claims handling in several respects. First, they argue, Unitrin failed to re-evaluate the UIM claim when presented with new information

and then make a higher offer despite raising the amount of its reserves. Second, they contend that Unitrin failed to make a timely partial payment of $10,000 even though that amount was undisputed. Finally, they argue that Unitrin violated the UIPA and its own claims-handling policies in at least two respects—by failing to notify Kleinz of its position that his alleged contributory negligence reduced the value of his claim, and failing to respond to an offer within ten days. Each of these issues will be addressed in turn.

A. <u>Failure to Increase Offer</u>

Plaintiffs contend that Unitrin's failure to re-evaluate their claim when it received a package of information from their attorney in December 2018 and its "lowball" offer in light of its valuation and the reserves that had been established represent evidence of bad faith.

As an initial matter, while Plaintiffs claim that Unitrin raised its reserves after receiving additional information from them, the record establishes that McLaughlin set the reserves at $25,000 in November 2017 and never changed them thereafter. (ECF No. 91 Exs. 10, 11, 12.) Thus, there is no basis for Plaintiffs' suggestion that while Unitrin raised its reserves, it did not correspondingly re-evaluate their UIM claims.

Plaintiffs also contend that Unitrin failed to increase its offer despite increasing its assessment of the value of their claim. As previously discussed, Plaintiffs note that McLaughlin omitted from both his January and July 2018 claims notes $45,000 worth of injuries that had been included in his original November 3, 2017 evaluation. However, McLaughlin testified that this was simply a mistake "because if you look at the doctor's notes there's no difference in what I already knew." Thus, this evidence suggests that Unitrin's adjustor made an error when he recorded or updated information in his notes. This would amount to negligence, not bad faith. Importantly, it is undisputed that McLaughlin concluded in each evaluation that a reserve setting

of $25,000 was appropriate and his assessment of the potential value of the UIM claim did not change.

"[S]etting aside reserves does not amount to an admission of liability." *Fidelity & Deposit Co. of Md. v. McCulloch*, 168 F.R.D. 516, 525 (E.D. Pa. 1996). *See Williams v. Nationwide Mut. Ins. Co.,* 750 A.2d 881, 887 (Pa. Super. 2000) ("Reserves are merely amounts set aside by insurers to cover potential future liabilities."); *Williams v. Hartford Cas. Ins. Co.*, 83 F. Supp. 2d 567, 575-76 (E.D. Pa. 2000) ("the setting of reserves is an estimate of an insurer's exposure under a claim ... [but] the court is reluctant to fashion a rule requiring an insurer to make an offer reflecting the reserve as soon as it is set."). *See also Stewart v. Geico Ins.*, 2020 WL 822053 (W.D. Pa. Feb. 19, 2020) (summary judgment granted for insurer on bad faith claim where plaintiff pedestrian suffered injuries that he valued at $2 million but the insurer set reserves at $55,000 and offered $25,000); *Schifino v. Geico Gen. Ins. Co.*, 2013 WL 6533180, at *19 (W.D. Pa. Dec. 13, 2013) (bad faith does not hinge on whether an offer is less than the reserves); *Johnson v. Progressive Ins. Co.*, 987 A.2d 781, 785 (Pa. Super. 2009) (same).

Thus, the fact that Unitrin's settlement offer of $10,000 was less than the $25,000 amount set in the reserves is not evidence of bad faith. Moreover, there is no evidence that McLaughlin concluded that the value of Kleinz's UIM claim was far in excess of the amount he set as a reserve or that his offer was unreasonable.

Citing *Bonenberger*, Plaintiffs claim that the court in that case affirmed a finding of bad faith when the insurer's settlement offer represented only 9% of the value of the claim. That was not the basis for the court's holding, however. Rather, the court affirmed the trial court's conclusion that Nationwide claims handlers "disregarded Plaintiff's medical records, conducted no independent medical examination, and made no reasonable evaluation based on Plaintiff's

presentment." 791 A.2d at 381. The court also found that Nationwide's claims handlers relied upon its Best Claims Practice Manual, which instructed them to reduce the average claim payment to a level first consistent with then lower than major competitors, and to be a "defense-minded" carrier in the minds of the legal community. Thus, the court's conclusion was not based on a comparison of Nationwide's initial offer to the value of the claim.

In support of its motion for summary judgment with respect to the bad faith claim, Unitrin cites *Rau v. Allstate Fire & Casualty Insurance Co.*, 793 F. App'x 84 (3d Cir. 2019). In *Rau*, the plaintiff claimed that Allstate engaged in bad faith by failing to properly evaluate her injuries and making a lowball offer on the UIM claim. The plaintiff was injured in an auto accident and after settling with the driver for $95,000 of his $100,000 policy limit, she sought the full $200,000 UIM limits under her own Allstate policy. Allstate's adjuster initially valued Rau's claim at between $110,000 and $115,000 and offered to settle the claim for $10,000. Rau refused the offer and filed suit. The parties later entered into binding arbitration, and the arbitrators determined the total claim was worth $306,345.

On these facts, the Third Circuit affirmed the district court's decision to grant Allstate's motion for summary judgment regarding plaintiff's bad faith claim because Rau failed to create a genuine issue of material fact regarding Allstate's assertion that it negotiated in good faith. *Id.* at 86. Moreover, the Court found, "a low but reasonable estimate of the insured's losses" cannot support a claim of bad faith. *Id.* The Third Circuit agreed with the district court that although the arbitrators' valuation of the case far exceeded that of the adjuster, the adjuster had a reasonable basis for his offer. The record showed that a large portion of Rau's valuation of his claim was attributable to a potential future surgery that was disputed by an independent medical examination, the fact that Rau had health coverage that would defray the cost of future surgery, and that "Allstate

believed Rau was exaggerating her symptoms in her deposition during the underlying UIM litigation." *Id.* at 88. On these facts, the Third Circuit affirmed the district court's entry of summary judgment in favor of Allstate with respect to its insured's bad faith claims.

In *Katta v. Geico Ins. Co.*, 2013 WL 275529 (W.D. Pa. Jan. 24, 2013), the plaintiff was injured in an accident with an uninsured motorist and Geico offered $7,000 in settlement. Shortly thereafter, Katta filed suit. He claimed lost wages in the amount of $17,700, but the value of his claim remained uncertain because, among other things, it could not be determined whether he required surgery. In ruling on Geico's motion for partial summary judgment, Judge Conti held that: 1) because the value of the claim remained uncertain, Geico's offer was not in bad faith; 2) the offer was not unreasonably low because an initial offer below the alleged amount of loss does not constitute evidence of bad faith; 3) when the parties went to a mediation, Geico opened with a $7,000 offer, but Katta was unwilling to move from his demand of the full $100,000 policy limits, resulting in a stalemate. Judge Conti concluded that:

> Finally, there is no evidence that plaintiff attempted to bolster his negotiating position by offering additional evidence in support of his claim. *See Smith [v. State Farm Mut. Auto. Ins. Co.*], 2012 WL 508445, at *1-2 [E.D. Pa. Feb. 16, 2012]] (during robust settlement negotiations, the plaintiff continually demanded the policy limits, but also offered further evidence in support of her demand after rejecting each counteroffer). Plaintiff in the present case offers no evidence that he ever rejected defendant's offer, and did not communicate additional information to defendant about his claim between the time that defendant made its offer and plaintiff filed suit. Plaintiff's unwillingness to negotiate in the face of an initial offer is not a basis for bad faith.

> It is troubling that plaintiff seeks to proceed with his bad faith claim despite having made no effort to engage in negotiations with defendant. Plaintiff was under no duty to negotiate, but courts have recognized that stonewalling negotiations is a relevant consideration in determining whether an insurer acted in bad faith. *Johnson [v. Progressive Ins. Co.*], 987 A.2d [781,] 785 [(Pa. Super. 2009)]. If plaintiff's bad faith claim were to proceed, future plaintiffs could survive summary judgment on bad faith claims by simply filing suit after receiving an offer that the plaintiff believes is too low. The mere fact that defendant's initial offer was lower than plaintiff's unsubstantiated claim of lost wages, in absence of any other substantive

> evidence of bad faith, including unreasonable delay, intentional deception, or the like, is not sufficient to constitute clear and convincing evidence. *Smith*, 2012 WL 508445, at *7-8 (even "low-ball offers" may not be sufficient to support a claim of bad faith; particularly where the plaintiff's other allegations of bad faith are "conclusory and not supported by any factual averments").

*Id.* at *10. *See also Koseriowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 592 (E.D. Pa. 1999) (offering the bottom of an estimated settlement range does not constitute bad faith, and insurance company may properly seek to negotiate a settlement agreement where the value of injuries is "uncertain"), *aff'd mem.*, 234 F.3d 1265 (3d Cir. 2000).

Unitrin asserts that Plaintiffs are making the same unfounded argument here. Plaintiffs contend that McLaughlin failed to properly value Kleinz's case based on the possibility of his future treatment and potential permanency of certain injuries, along with his subjective complaints of pain and the medical information he provided.  However, it is undisputed that despite several requests by McLaughlin for a counter demand, Plaintiffs failed to do so or otherwise engage in any negotiations once Unitrin made its $10,000 payment.

Plaintiffs attempt to distinguish the *Katta* decision on the ground that the plaintiff in that case "was unwilling to move off the policy demand and demonstrated an 'unwillingness to negotiate.'" By contrast, they argue, once they had an understanding of their injuries, Plaintiffs "sought to further negotiate a settlement and informed defense counsel of the same." (ECF No. 88 at 23.) However, the situation presented in both cases is comparable: Plaintiffs refused to make a counter-offer and when they eventually did, they refused to move off the policy demand (less the $10,000 Unitrin had already paid).[19] See ECF No. 91 Ex. 4. Moreover, while Plaintiffs attempt to

---

[19] Plaintiffs also refer to *Katta* as "unreported," which is both inaccurate and irrelevant: district court cases (which are not binding but may be cited for their persuasive value) are not rendered more or less persuasive based on whether they are published in a bound West reporter or only on an online database. *See Manley v. Horsham Clinic*, 2001 WL 894230, at*4 & n.2 (E.D. Pa. Aug.

focus on what occurred after this case was filed, the primary basis for their bad faith claim is what transpired before then.

Simply put, Plaintiffs' argument is unsupported as a matter of fact and law. Here, the $25,000 reserve set by McLaughlin was consistent both before and during his interactions with Plaintiffs' counsel. Therefore, this is not a case in which he offered a minimal amount despite setting a high reserve. Moreover, the fact that he did not revise his reserve upward after receiving a settlement package from Plaintiffs' counsel, adjust his valuation of the claim or increase his offer does not reflect bad faith in the absence of any record evidence that he believed the claim to have a value well in excess of the offer that was made. Plaintiffs have proffered no evidence of intentional deception or unreasonable delay by Unitrin or any evidence from the contemporaneous notes of McLaughlin that he intentionally made a "lowball" offer despite believing that the claim was worth substantially more.[20]

Plaintiffs told Unitrin that Kleinz was being treated for certain injuries and that the value of his claim was uncertain. Unitrin evaluated the claim both before and after Plaintiffs supplied a demand package, confirmed that in its view, the previously-set reserve of $25,000 was still appropriate and offered $10,000. After they requested and accepted the $10,000 that was offered, Plaintiffs never made another counter demand or otherwise provided any feedback or information to Unitrin that would even have given it a basis to reevaluate the value of Plaintiffs' claim.  Thus, Plaintiffs have not proffered any evidence that Unitrin's conduct was unreasonable or that it

---

9. 2001). *See also Smith v. Astrue*, 639 F.Supp.2d 836, 841-42 (W.D. Mich. 2009); *National Union Fire Ins. Co. of Pittsburgh, Pa. v. BP Amoco P.L.C.*, 319 F.Supp.2d 352, 362 n. 6 (S.D.N.Y. 2004).
[20] Plaintiffs' repeated references to Unitrin's redaction of the claim notes in order to suggest improper conduct is unavailing. Unitrin had the right to assert privileges related to its notes. The fact that the Court, after conducting an *in camera* review, disagreed with some of the positions taken by Unitrin is not evidence of bad faith. Moreover, Plaintiffs ultimately obtained access to these portions of the notes before McLaughlin's deposition and the close of discovery.

engaged in bad faith.

    B.  <u>Partial Payment of Undisputed Amount</u>

    Plaintiffs contend that Unitrin's failure at an earlier date to make an offer of the partial payment of $10,000, which they characterize as undisputed amount, represents evidence of bad faith. Specifically, Plaintiffs argue that:

> The Defendants undertook to conducted a partial valuation of the claim of the UIM benefits on their own and made an offer based on the evaluation[.] It was understood in Dec 2018 that Mr. Kleinz had not fully recovered from his injuries McLaughlin's supervisor told him to do review with what they had and make an offer if any benefits were owed. In January of 2019, Defendants offered $10,000. In June of 2019, Plaintiffs' Counsel had requested Defendants make a "partial payment" on the injuries that they knew existed at time[.] Initially, McLaughlin refused and indicated there would be no advances. We know that at the time Mclaughlin refused to pay the $10,000 the amount was undisputed, where we know the reserves were conducted previously, including the November of 2017 reserves review had the total value at of the injuries at $75,000 and McLaughlin sent a letter confirming the $10,000 was "undisputed" a few days after initially rejecting it. Once Defendants refused to pay the undisputed partial valuation that it knew was "undisputed" it committed bad faith.

(ECF No. 88 at 22) (record citations omitted) (mistakes in original).[21]

    This recitation combines various events and omits others. Unitrin did offer $10,000 in January 2019 in response to Plaintiffs' demand, but Plaintiffs' counsel rejected the offer and refused to make a counter-demand at that time because Kleinz was still in treatment. McLaughlin initially rejected Plaintiffs' request five months later in June 2019 for the previously-offered $10,000, but within a week, he agreed and sent the check. And, as noted above, when McLaughlin set the value of the claim at $75,000 in November 2017, this included $50,000 that would be paid

---

[21] Plaintiffs highlight the fact that the letter accompanying the check used the word "undisputed," but it is clear from the entire record that Unitrin, having offered $10,000, was fulfilling its offer to pay that amount and considered the $10,000 to be its full offer for the UIM claim, although it recognized that Plaintiffs (the only party to use the term "partial payment") were still deciding whether they would agree to settle for this amount.

by Marinello's insurer, thus leaving $25,000 as Unitrin's reserves.[22]

Several recent decisions are instructive in addressing this issue. First, in *Keefe v. Prudential Property and Casualty Insurance Co.*, 203 F.3d 218 (2000), the Third Circuit Court of Appeals considered whether under Pennsylvania law, an insurance company's refusal to pay unconditionally the undisputed amount of an insured's UIM claim could represent bad faith. In that case, it was the insurer's position that it never has an obligation to make a partial payment on a UIM claim. Noting the absence of Pennsylvania appellate decisions on this issue, the *Keefe* court held that based upon the definition of bad faith in *Terletsky v. Prudential Property and Casualty Insurance Co.,* 649 A.2d 680 (Pa. Super. 1997),

> We are convinced that, if Pennsylvania were to recognize a cause of action for bad faith for an insurance company's refusal to pay unconditionally the undisputed amount of a UIM claim, it would do so only where the evidence demonstrated that two conditions had been met. The first is that the insurance company conducted, or the insured requested but was denied, a separate assessment of some part of her claim (*i.e.,* that there was an undisputed amount). The second is, at least until such a duty is clearly established in law (so that the duty is a known duty), that the insured made a request for partial payment.

*Id.* at 226.

In *Williams v. Nationwide Mutual Insurance Co.,* 750 A.2d 881 (Pa. Super. 2000), the plaintiffs/insureds asserted a bad faith claim based upon the insurer's failure to promptly pay undisputed partial UIM benefits. The Pennsylvania Superior Court, citing *Keefe,* sustained the insurer's preliminary objections to the bad faith claim. The court noted that the insureds did not plead that they requested, or that the insurer conducted, a valuation of their claim in order to set a partial fixed amount of UIM benefits. Even if the insureds had done so, however, they also would have been required to plead that the parties had reached an agreement that the partial valuation

---

[22] "In UIM claims, the carrier is permitted a credit of the tortfeasor's policy limits when evaluating the claim." *Stewart*, 2020 WL 822053, at *4 n.1 (citation omitted).

represented an "undisputed amount" of benefits owed. In the absences of such an agreement, no undisputed amount was ever established. *See also Zappile v. Amex Assur. Co,* 928 A.2d 251, 257 (Pa. Super. 2007) (rejecting the insured's bad faith claim based on Amex's failure to pay his undisputed $4,000 wage loss claim, its undervaluing of his UIM claim and its refusal to raise its offer).

As this Court has previously noted, the Amended Complaint does not allege that Unitrin conducted, or that Plaintiffs requested but were denied, a separate assessment of some part of their claim. Plaintiffs do not plead that the parties had undertaken a partial valuation and agreed that the amount of $10,000 was an undisputed amount of benefits owed. Rather, it was an "initial offer" that Plaintiffs initially declined and later requested.  As the record reflects, counsel for Plaintiffs stated that "I agree that my client did not accept the offer of $10,000," but also indicated that "I don't believe I rejected the $10,000." He again asked Unitrin to "issue a draft in the amount of the $10,000 as a partial payment of the UIM benefits until a counter can be made and the matter can be resolved in full." After an exchange of emails on June 11, McLaughlin agreed to forward the $10,000 payment to counsel. While Plaintiffs' counsel characterized this as a "partial payment" of Plaintiffs' UIM claim, Unitrin had a different concept of the purpose of the payment, noting that "…we are attaching our check for $10,000 and *we restate that this is our offer to settle Mr. Kleinz's UIM claim. It is our understanding that you have not decided if this amount will constitute settlement of the claim or not…*" (ECF No. 91 Ex. 22.) (emphasis supplied.)

Simply put, Unitrin's agreement to pay to Plaintiffs the amount of its previous offer to settle the UIM claim does not represent evidence of bad faith. *See, e.g., Katta,* 2013 WL 275529, at *9. While the $10,000 payment could be characterized as "undisputed" since Unitrin agreed to pay it and Plaintiffs,  after first rejecting the offer,  later requested it, there were no communications

about this amount representing a separate assessment of some component of Kleinz's claim.  Even if this represents an undisputed amount, however, it was Plaintiffs, not Unitrin, that delayed the payment by waiting five months to reconsider their previous rejection.  Moreover, as McLaughlin clearly stated at the time of payment, it was Unitrin's offer to settle and it was Unitrin's understanding that Plaintiffs had not decided if the amount paid would constitute a full settlement. Thus, to the extent that Plaintiffs continue to assert that the failure by Unitrin to make a more timely partial payment represents bad faith, any such claim fails as a matter of law. Plaintiffs cannot assert that Unitrin acted in bad faith by offering to make a partial payment—which it was not required to do—and not offering it again sooner after Plaintiffs rejected it.

C.  Reliance on UIPA Violations

The parties agree that there is no private cause of action for a violation of the UIPA. *Fay v. Erie Ins. Group*, 723 A.2d 712, 714 (Pa. Super. 1999). Plaintiffs argue, however, that UIPA violations nevertheless may be cited as evidence of bad faith. However, the three cases they cite to support this conclusion were all issued prior to the seminal *Terletsky* case, which was decided in 1994. *See MacFarland v. United States Fid. & Guar. Co.*, 818 F. Supp. 108 (E.D. Pa. 1993); *Coyne v. Allstate Ins. Co.*, 771 F. Supp. 673 (E.D. Pa. 1991); *Romano v. Nationwide Mut. Fire Ins. Co.*, 646 A.2d 1228, 1233 (Pa. Super. 1994).

Since *Terletsky*, federal courts have uniformly rejected plaintiffs' attempt to rely on UIPA violations to support bad faith claims. *See UPMC Health Sys. v. Metropolitan Life Ins. Co.*, 391 F.3d 497, 505-06 (3d Cir. 2004) ("Applying *Terletsky* to this case, UPMC cannot rest its bad faith claim on the violations of the UIPA"). *See also Leach v. Northwestern Mut. Ins. Co.*, 262 F. App'x 455, 459 (3d Cir. 2008); *Dinner v. United Servs. Auto. Ass'n Cas. Ins. Co.*, 29 F. App'x 823, 827 (3d Cir. 2002); *Horvath v. Globe Life & Accident Ins. Co.*, 2019 WL 4058999, at *12 (W.D. Pa.

Aug. 27, 2019); *United States Fire Ins. Co. v. Kelman Bottles LLC*, 2014 WL 2160934, at *11 &

n.6 (W.D. Pa. May 23, 2014); *Oehlmann v. Metropolitan Life Ins. Co.*, 644 F. Supp. 2d 521, 530

n.11 (M.D. Pa. 2007); *Employers Mut. Cas. Co. v. Loos*, 476 F. Supp. 2d 478, 494 (W.D. Pa.

2007). Plaintiffs' representation that there are conflicting holdings is not accurate: for the past 26

years, case law in federal courts on this issue has been consistent.

Nor can Plaintiffs ground their bad faith claim on the notion that McLaughlin violated

Unitrin's own policies on how to handle claims (which mirror the UIPA standards that McLaughlin

admitted violating). They rely upon a decision in which the court allowed the insurance company's

claims handling policy to be admitted because it recommended claims handling behavior that

detailed aggressive litigation tactics as evidence of bad faith. *See Berg v. Nationwide Mut. Ins.

Co.*, 44 A.3d 1164, 1177 (Pa. Super. 2012). In this case, there is no evidence in the record that

Unitrin's manual promotes improper tactics or conduct; quite the contrary.  Plaintiffs contend that

McLaughlin violated Unitrin's policies. The issue here is not whether Unitrin's claims handling

policy is admissible, but whether it provides any support for Plaintiffs' bad faith claim. It does not.

**V.    Conclusion**

Plaintiffs have failed to demonstrate the existence of a genuine issue of material fact

regarding their claims of bad faith.  Simply put, they have failed to create a genuine issue of

material fact because they have not proffered sufficient evidence to support a bad faith claim

against Unitrin. Therefore, Unitrin's Motion for Partial Summary Judgment will be granted and

Count II of the Amended Complaint will be dismissed.

An appropriate order will follow.

Dated: December 10, 2020            BY THE COURT:


                                    s/ Patricia L Dodge
                                    PATRICIA L. DODGE
                                    United States Magistrate Judge